January Term,
1861.

STATE ex rel.
CALKINS et al.
v.
HARVEY.

---

## STATE ex rel. CALKINS et al. vs. HARVEY.

Chapter 240 of the Laws of 1860, provides for a distinct and separate publication of the general laws of the legislature, in addition to that prescribed by section 17 of chapter 6 of the Revised Statutes; and it is therefore the duty of the secretary of state to furnish the state printer with copies of such laws pursuant to the provisions of said section.

MANDAMUS to compel *L. P. Harvey*, secretary of state, to furnish to the relators, who were the state printers, copies of the laws for publication, or to show cause, &c. The case turned upon the proper construction of chapter 240 of the laws of 1860, and is sufficiently stated in the opinion of the court. The defendant moved to quash the writ.

*C. P. Hiller*, for relators.

*J. H. Howe*, Attorney General, for the state.

*By the Court*, DIXON, C. J. We are unable to come to any other conclusion than that the act of March 30th, 1860, (Laws of 1860, p. 216), provides for a distinct and separate publication of the laws, in addition to that prescribed by section 17 of chapter 6 of the Revised Statutes. That section was in force at the time the act was passed, and provides that the secretary of state, immediately after any general law of the legislature shall have been deposited with him, shall furnish a copy thereof to the person authorized to print the laws, who shall immediately publish the same in a newspaper printed at the seat of government. The act contains no repealing clause, and it is only contended that its first section operates by implication as a partial repeal or modification of the provisions of section 17. There are some portions of the first section of the act which seem to be wholly inconsistent with the idea that the legislature intended that the publication provided for in section 17 should be continued ; and we should be inclined to hold that such would be its effect, were it not for the proviso contained in the fourth section. But it appears to us that the latter section entirely suspends and removes the effect which might otherwise be given to the language of the first. It declares that the provisions of the act shall not apply to any publication made or authorized to be made by or under the direction of the then state printer, or by or under the direction of any person who may be state printer under any contract thereafter made. We understand the words in section 17, " the person authorized to print the laws," to have reference to the state printer or contractor from the government. At the time that section was enacted, and up to and at the time of

January Term,
1861.

STATE ex rel.
CALKINS et al.
v.
HARVEY.

March 12.

January Term, the passage of the act approved March 30th, 1860, they
1861.      could have had no other possible application.   Now, if at

State ex rel. the time of the passage of that act, the state printer was au-
Calkins et al.
v.          thorized and required to make a publication of all general
Harvey.     laws in a newspaper printed at the seat of government, how
•can it be said that the fourth section does not expressly con-
tinue that authority and requirement ?   It declares, in effect,
that the publication authorized and required in the first sec-
tion shall not apply to, that is shall not be construed to mean
or include, any publication made or authorized to be made
by or under the direction of the then state printer, or of any
person who might be state printer under any future contract,
thus taking the publication then required to be made by
him wholly out of its operation, and leaving it to stand as
before.   The language " under any contract hereafter made,"
is obviously descriptive of the person of the state printer, and
cannot be regarded as conferring a discretionary power upon
the board of commissioners at their pleasure to contract or
not to contract with such printer for the publication of the
laws in a newspaper at the seat of government.   And the
words " authorized to be made" also as obviously refer to
authority of law, and not authority derived from the specific
terms of any contract; for, from the hasty examination which
we have been able to make, we do not find that the news-
paper publication of the laws is now, or ever has been
(though in this we may be mistaken) the specific subject of
contract between the state and the printer.   In providing
for such publication, the legislature seem, as in section 17, to
have made it an incident of the printing contract, and to
have imposed it as a duty upon the public printer to see
that it was made.   This duty, by the terms of section 4, still
rests upon him, and we do not see how the secretary of state
can legally refuse to furnish him with copies of the general
laws, so as to enable him to discharge it.

     If section 4 had declared that the provisions of the act
should not apply to any *laws* published, or authorized to be
published, by the state printer, then we think it clear that it
would have operated as a total repeal of so much of section
1 as provided for the publication of general laws in the *State*

*Journal.* But it does not—it only declares that it shall not apply to any *publication* made or athorized to be made by the state printer. And as there may be many different publications of the same laws, as well at the seat of government as elsewhere, and as it is confessedly within the power of the legislature to provide for two or more, we see no way to give effect to the first section, which positively declares that all laws, required by law to be published, shall be published in the *State Journal*, except by holding that the act provides for a second publication. By this construction, but not otherwise, we can comply with the well settled rule which requires courts so to interpret legislative enactments, as, if possible, to give effect to all their provisions. We therefore adopt it.

This view of the statutes does away with the objection arising out of the relator's contract. It becomes a case of double exceptions, like two negatives, which are equivalent to an affirmative. The contract excepts what the statute contains, and the statute excepts that which follows the contract. Surely there is no foundation in such a case for conflict or collision. All the provisions taken together form a most interesting and harmonious system for the accomplishment of the highly important object of a correct and authoritative publication of the laws.

The motion to quash must be overruled.